UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION
Civil Action No.:

**FILED**

JAN 1 4 2005

LARRY W PROPES, CLERK
CHARLESTON, SC

1  05- 0132-24

Clifton DeLoach and Jennifer Duncan,
individually and as the natural
parents and guardians of Gracelyn
DeLoach, a minor under the age of
fourteen, along with a Class of others
similarly situated,

        Plaintiffs,

vs.

Norfolk Southern Corporation;
DSM Chemicals North America, Inc.,
Rhodia, Inc.; John Doe Chlorine Manufacturers,
Owners, and/or Distributors; and John Doe
Pressurized Tank Manufacturers, Owners,
and/or Distributors,

        Defendants.

**CLASS ACTION COMPLAINT**

(Negligence
Strict/Absolute Liability
Bystander Liability
Medical Monitoring)

**JURY TRIAL DEMANDED**

HULSEY LITIGATION GROUP, LLC
Paul H. Hulsey, D.S.C. Bar No. 9325
William J. Cook, D.S.C. Bar No. 7167
Charleston Harbor
2 Wharfside 3
Charleston, SC 29401
tel: (843) 723-5303
fax: (843) 723-5307

and

Martha M. Rivers, D.S.C. Bar No. 7414
Attorney at Law
13326 Church Street
Williston, South Carolina 29853
tel: (803) 266-2290
fax: (803) 266-2588

**ATTORNEYS FOR THE PLAINTIFFS**

## I. INTRODUCTION

1. Representative Plaintiffs Clifton DeLoach and Jennifer Duncan, individually and as the natural parents and guardians of Gracelyn DeLoach, a minor under the age of fourteen, by and through their undersigned attorneys, bring this action individually and as a class action pursuant to Rule 23 of the South Carolina Rules of Civil Procedure.

2. The Representative Plaintiffs are victims of a train collision and derailment of a liquid chlorine tanker that occurred in Graniteville, South Carolina, in the early morning hours of January 6, 2005, which resulted, *inter alia*, in the release of toxic chemicals, including chlorine gas, into the surrounding area.

3. The Representative Plaintiffs seek actual damages, including a separate award for medical monitoring, punitive damages, and any equitable relief the Court deems just and proper on behalf of themselves and a class consisting of all persons similarly situated described more fully below.

## II. JURISDICTION AND VENUE

4. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, diversity of citizenship, in that there is complete diversity of the parties and the amount in controversy exceeds $75,000.

6. Representative Plaintiff Clifton DeLoach is a citizen and resident of Graniteville, South Carolina, in Aiken County.

7. Representative Plaintiff Jennifer Duncan is a citizen and resident of Graniteville, South Carolina, in Aiken County.

8. Representative Plaintiff Gracelyn DeLoach is the infant daughter of Clifton DeLoach and Jennifer Duncan and resides with her parents in Aiken County, South Carolina.

9. Representative Plaintiffs Clifton DeLoach and Jennifer Duncan are the natural guardians of Gracelyn DeLoach with authority to prosecute this action on her behalf.

10. Other Class Members, upon information and belief, are or were citizens or residents of Graniteville, South Carolina, in Aiken County.

11. Defendant Norfolk Southern Corporation (Norfolk Southern) is a foreign corporation based in Norfolk, Virginia, authorized to conduct business within South Carolina which owns, operates or manages railroad tracks and trains and conducts commerce within Aiken County, and throughout South Carolina.

12. At all relevant times, Norfolk Southern owned, operated, managed or otherwise had direct supervision and control over the railroad trains, cars, cargo, tracks, and track apparatus within Graniteville, South Carolina.

13. Defendant DSM Chemicals North America, Inc. (DSM) is a foreign corporation, based in Augusta, Georgia, authorized to conduct business in the United States and conducts commerce in Aiken County and throughout South Carolina.

14. Upon information and belief, at all relevant times, DSM manufactured, owned, produced, distributed, and/or transported liquid chlorine in pressurized tanks on trains owned, controlled, and operated by Norfolk Southern.

15. Rhodia, Inc. (Rhodia) is a foreign corporation based in Cranbury, New Jersey, authorized to conduct business in the United States and conducts commerce in Aiken County and throughout South Carolina.

16. Upon information and belief, at all relevant times, Rhodia manufactured, owned, produced, distributed, and/or transported liquid chlorine in pressurized tanks on trains owned, controlled, and operated by Norfolk Southern.

17. Upon information and belief, Defendant John Doe Liquid Chlorine Manufacturers, Owners, and/or Distributors and Defendant John Doe Pressurized Tank Manufacturers, Owners, and/or or Distributors (hereinafter the "John Doe Defendants") are foreign corporations which conduct commerce in Aiken County and throughout South Carolina.

18. As further described below, the acts and omissions of Norfolk Southern, DSM, and the John Doe Defendants which contributed to the injuries of the Representative Plaintiffs and Class Members occurred in Graniteville, South Carolina. Therefore, personal jurisdiction and venue in the Aiken Division of the United States District Court for the District of South Carolina are proper under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

### III. FACTS

19. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

20. On or about January 6, 2005, the Representative Plaintiffs were present in or near their residence at 204 Main Street, Graniteville, South Carolina. Other Class Members were also present in the Graniteville vicinity.

21. At approximately 2:30 A.M., a 42-car train owned and/or operated under the direct supervision and control of Norfolk Southern and its employees and/or agents was traveling east from Macon, Georgia to Columbia, South Carolina. As the train traveled

through the Graniteville area, it struck another parked train after passing through a dark signal, manual switch area of the tracks. The parked train was also owned and/or operated under the direct supervision and control of Norfolk Southern, its employees and/or agents.

22. The collision occurred while the 42-car train was traveling at a high rate of speed and caused the derailment of several railroad cars connected to one or both trains. This derailment resulted in punctures to the pressurized tanks and a resulting release of highly toxic chemicals, including chlorine gas, into the immediate and surrounding area of the tanker railroad cars.

23. The chlorine gas was released from the tanker cars in the form of a plume of toxic gas that traveled across an area of Graniteville, South Carolina (hereinafter the "Plume Area").

24. Representative Plaintiffs Clifton DeLoach and Gracelyn DeLoach were asleep in their home within the Plume Area when the collision occurred. Both suffered prolonged exposure to the toxic chemicals.

25. Jennifer Duncan unknowingly entered the Plume Area before the chemical release stopped or dissipated. She suffered prolonged exposure to the toxic chemicals. Other Class Members within the Plume Area were also exposed to the toxic chemicals.

26. All residents and visitors in the Plume Area and an additional buffer area were evacuated by emergency personnel and government authorities on or about Thursday, January 6, 2005.

27. Exposure to chlorine gas by means of inhalation or topical contact with the skin is extremely harmful and hazardous to humans.

28. Evacuated residents outside the Plume Area were allowed to return to their homes on January 13, 2005. Residents within the Plume Area continue to be subject to the evacuation order.

## IV.    CLASS ACTION ALLEGATIONS

29. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

30. The Representative Plaintiffs bring this action individually and seek class certification to bring this action on behalf of all persons similarly situated who were exposed within the Plume Area. Because of the complete diversity of citizenship between the parties, this action before this U.S. District Court is the only venue in which complete relief may be afforded to the parties given the circumstances of the Representative Plaintiffs, Class Members, and all necessary foreign Defendants.

31. The proposed class does not include directors, officers, or employees of Defendants.

32. The Class Members include at least several thousand people who were evacuated from the Plume Area in Graniteville following the train collision and derailment described herein. The Plume Area is in the heart of Graniteville, South Carolina, including the Avondale Mills area.

33. The Class Members are numerous. Joinder is impracticable, would unnecessarily burden the Court, and would prejudice Class Members. Plaintiffs believe that there are thousands of Class Members. All of their identities are not yet known. The Class is easily defined by time, exposure, and geographic area. The class of persons includes all those residents and visitors present within the Plume Area on January 6, 2005, and thereafter while chlorine gas and other chemicals were present.

34. The Representative Plaintiffs' claims and any defenses thereto are typical of the Class Members, arise from the same course of conduct, and involve questions of fact and law common to the Class.

35. The residents and visitors present within the Plume Area share common questions of law and fact regarding their exposure to the toxic chemicals and the liability of the Defendants.

36. The Representative Plaintiffs' claims against the Defendants are representative of these common questions of law and facts.

37. The Representative Plaintiffs will fairly and adequately protect the interests of the class.

38. Representative questions of law and fact common to the Class Members include whether Defendants acted negligently and whether Defendants' conduct subjects them to strict/absolute liability, bystander liability, and concomitant responsibility for medically monitoring the health of all those Class Members exposed within the plume area.

39. The interests of the Representative Plaintiffs are coincidental with and not antagonistic to those of the other Class Members.

40. Neither the Representative Plaintiffs nor their counsel have any interest which might cause them to fail to vigorously pursue this action.

41. The Representative Plaintiffs are represented by counsel who are knowledgeable and experienced in the prosecution of complex litigation and mass torts, including class action litigation.

42. The Representative Plaintiffs' Counsel have the ability to advance the costs and expenses of the litigation.

43. To the extent the relief sought is not declaratory or injunctive with respect to the Class as a whole, the amount in controversy exceeds $100 for each member of the Class.

44. Any potential variation within the Class can be appropriately dealt with through the designation of sub-classes with appropriate representative Plaintiffs.

45. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice because:

    (a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class who would confront the Defendants opposing the Class with incompatible standards of conduct;

    (b) separate adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of the other adjudications or would substantially impair or impede their ability of other individual Class Members to protect their interests;

    (c) final equitable and other relief is appropriate with respect to the Class;

    (d) the action is manageable as a Class;

    (e) individual claims of the separate Class Members might would be prejudiced by the expense of multiple separate litigations; and

    (f) it is probable that the amount which may be recovered by individual Class Members will be large enough in relation to the expense and effort of administering the action to justify class treatment.

### FOR A FIRST CAUSE OF ACTION
**(Negligence as to Norfolk Southern)**

46. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

47. Norfolk Southern was negligent or careless and/or reckless, willful or wanton, as described below.

48. Norfolk Southern had a duty to at the very least use due care in its transportation of liquid chlorine.

49. Norfolk Southern breached its duty of due care in one or more of the following ways:

   (a)   failure to properly and safely maintain the Graniteville area railroad track;

   (b)   failure to place the track switching mechanism in the proper position for safe operation;

   (c)   failure to properly train its personnel, including but not limited to train engineers, conductors, and crew members;

   (d)   failure to provide, maintain, and/or implement adequate policies and procedures to warn appropriate personnel and approaching trains of track hazards;

   (e)   failure to maintain a safe and appropriate speed while transporting hazardous materials within a populated area;

   (f)   failure to properly inspect or maintain railroad cars carrying hazardous materials to prevent public exposure;

   (g)   failure to respond in a timely manner to prevent prolonged exposure to the public including the Representative Plaintiffs and other Class Members;

   (h)   acting in a careless and reckless manner in both the operation of the colliding railroad trains and in responding to the release of toxic chemicals upon the

       general public including the Representative Plaintiffs and other Class Members; and

    (i)    transporting railroad cars containing hazardous chemicals in close proximity to a dark area without adequate switching and safety measures so as to insure that inadvertent, careless, or negligent operation of the main line or switching movement would not present an unreasonable danger to the public.

50. The collision and foreseeable subsequent release of ultrahazardous toxic chemicals described herein was the direct and proximate result of the acts and omissions of Norfolk Southern, its employees and/or agents.

51. As a direct and proximate result of Norfolk Southern's negligence, carelessness,and/or willful, reckless and wanton conduct, the Representative Plaintiffs and other Class Members suffered economic, medical, and emotional damages including, but not limited to, one or more of the following:

    (a)    physical injury due to toxic chemical exposure;

    (b)    emotional distress due to toxic chemical exposure:

    (c)    emotional distress caused by the injury of friends and relatives due to toxic exposure;

    (d)    damage to real and/or personal property;

    (e)    loss of value of property;

    (f)    need for prolonged medical monitoring resulting in economic expense and emotional distress;

    (g)    emotional distress caused by the potential of long term medical injury;

    (h)    economic losses due to the evacuation;

    (i)    loss of income;

    (j)    lost earning potential; and/or

    (k)    loss of consortium.

52. The Representative Plaintiffs and the other Class Members are entitled to recover actual damages, including separate awards for medical monitoring, punitive damages, attorney's fees and litigation costs.

## FOR A SECOND CAUSE OF ACTION
### (Negligence as to DSM, Rhodia, and the John Doe Defendants)

53. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

54. DSM, Rhodia, and the John Doe Defendants were negligent, careless and/or reckless, willful or wanton, as described below.

55. DSM, Rhodia, and the John Doe Defendants had a duty to use due care in distributing liquid chlorine.

56. DSM, Rhodia, and the John Doe Defendants breached their duty of due care in one or more of the following ways:

    (a)    failure to properly design the pressurized tanks that contained the liquid chlorine in order to prevent public exposure;

    (b)    failure to properly and safely maintain the pressurized tanks that contained the liquid chlorine;

    (c)    failure to properly inspect or maintain railroad cars and/or pressurized tanks carrying the liquid chlorine manufactured and/or distributed by Defendants in order to prevent public exposure;

 (d) failure to respond in a timely manner to prevent prolonged exposure to the public and Plaintiffs.

57. The foreseeable release of ultrahazardous toxic chemicals was the direct and proximate result of the acts and omissions of DSM and the John Doe Defendants, their employees, and agents.

58. As a direct and proximate result of DSM's, Rhodia's, and the John Doe Defendants' negligence, carelessness, or willful, reckless and wanton conduct, the Representative Plaintiffs and other Class Members have suffered economic, medical, and emotional damages including, but not limited to, one or more of the following:

 (a) physical injury due to toxic chemical exposure;

 (b) emotional distress due to toxic chemical exposure;

 (c) emotional distress caused by the injury of friends and relatives due to toxic exposure;

 (d) damage to real and/or personal property;

 (e) loss of value of property;

 (f) need for prolonged medical monitoring resulting in economic expense and emotional distress;

 (g) emotional distress caused by the potential of long term medical injury;

 (h) economic losses due to the evacuation;

 (i) loss of income;

 (j) lost earning potential; and/or

 (k) loss of consortium.

59. The Representative Plaintiffs and the proposed Class Members are entitled to recover actual damages, including separate awards for medical monitoring, punitive damages, reasonable attorney's fees, and litigation costs.

## FOR A THIRD CAUSE OF ACTION
(Strict/Absolute Liability as to Norfolk Southern)

60. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

61. Liquid chlorine and chlorine gas are ultrahazardous substances.

62. Exposure to liquid chlorine or chlorine gas is incompatible with human health. They are ultrahazardous chemical substances which cause immediate personal injury, disability, and death upon brief exposure.

63. Chlorine gas when released into the air is a silent, invisible, and deadly killer to which human beings have no natural defense.

64. Norfolk Southern was engaged in the business of capturing, storing, and moving liquid chlorine within interstate and instrastate commerce, which in the absence of extreme and extraordinary care will cause serious and permanent injury and death to humans.

65. Under the facts and circumstances of the catastrophe of January 6, 2005, it is clear that Norfolk Southern failed to properly and safely maintain and control the ultrahazardous chlorine and as a direct and proximate result thereof the Defendant breached its absolute duty of care owed to the public in general.

66. Norfolk Southern is held to a heightened duty of care as a result of its activities associated with the transportation of liquid chlorine and as such has absolute liability for injuries and damages which occur as a result of the discharge of such an ultrahazardous substance into the environment.

67. All the equipment and apparatus causing the exposure of the toxic chemicals, injury to the Representative Plaintiffs and Class Members, and eventual evacuation of the Plume Area were under the exclusive control of Norfolk Southern, its employees and/or agents.

68. The acts described herein do not occur in the ordinary course of business or operation of railroads.

69. The acts and injuries described herein are in no way the fault of the Representative Plaintiffs or Class Members, but rather those of Norfolk Southern, which loosed upon the public an inherently ultrahazardous substance.

70. Norfolk Southern's complete custody and control over the transportation of the liquid chlorine and other dangerous substances which resulted in the Plaintiffs' injuries created a heightened duty of care, the breach of which makes Norfolk Southern strictly or absolutely liable.

### FOR A FOURTH CAUSE OF ACTION
### (Strict/Absolute Liability as to DSM, Rhodia, and the John Doe Defendants)

71. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

72. Liquid chlorine and chlorine gas are ultrahazardous substances.

73. Exposure to liquid chlorine or chlorine gas is incompatible with human health. They are ultrahazardous chemical substances which cause immediate personal injury, disability, and death upon brief exposure.

74. Chlorine gas, when released into the air, is a silent, invisible, and deadly killer to which human beings have no natural defense.

75. DSM, Rhodia, and the John Doe Defendants were engaged in the business of producing, storing, distributing, and moving within interstate and instrastate commerce liquid

chlorine which in the absence of extreme and extraordinary care will cause serious and permanent injury and death to humans.

76. Under the facts and circumstances of the catastrophe of January 6, 2005, it is clear that DSM, Rhodia, and the John Doe Defendants failed to properly and safely store, maintain, transport, and control the ultrahazardous chlorine and as a direct and proximate result thereof the Defendants breached their absolute duty of care owed to the public in general.

77. DSM, Rhodia, and the John Doe Defendants are held to a heightened duty of care as a result of their activities associated with the manufacture, distribution, storage, ownership, sale, and/or transportation of liquid chlorine and as such have absolute liability for injuries and damages which occur as a result of the discharge of such an ultrahazardous substance into the environment.

78. The pressurized tanks and related apparatus, the puncture of which caused the exposure of the toxic chemicals and injury to the Representative Plaintiffs and Class Members were the responsibility of DSM, Rhodia, and the John Doe Defendants, their employees, and/or agents.

79. The acts and injuries described herein are in no way the fault of the Representative Plaintiffs or any other proposed Class Members, but rather that of DSM, Rhodia, and the John Doe Defendants, which loosed upon the public an inherently ultrahazardous substance.

80. DSM's, Rhodia's, and the John Doe Defendants' responsibility for the storage and transportation of the liquid chlorine and other dangerous substances which resulted in the Plaintiffs' injuries created a heightened duty of care, the breach of which makes them strictly or absolutely liable.

## FOR A FIFTH CAUSE OF ACTION
### (Bystander Liability as to All Defendants)

81. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

82. Clifton DeLoach and Jennifer Duncan suffered additional damage from their observation of the pain and suffering of their daughter and the death of Tony Michael DeLoach, Clifton's father.

83. Tony Michael DeLoach resided in the home with Plaintiffs.

84. Sometime after 2:30 A.M., Tony Michael DeLoach alerted Clifton DeLoach to the presence of a toxic odor in their home. After investigating the home and opening the front door, inhaling a substantial quantity of the chlorine gas, Tony Michael DeLoach immediately collapsed and while struggling and gasping for breath, he died. Clifton DeLoach witnessed his father's suffering and ultimate death and although helpless to assist or comfort him, attempted to get emergency help.

85. Clifton DeLoach then woke his infant daughter and attempted to maintain her breathing and respiratory function while awaiting emergency medical attention. They remained in the home until approximately 6:00 A.M. when Jennifer Duncan arrived. Jennifer Duncan transported both of them to an emergency response area.

86. Upon informative and belief, the Representative Plaintiffs believe an emergency response was not possible due to the plume of toxic chemicals.

87. Representative Plaintiff Clifton DeLoach and his infant daughter were hospitalized for several days. Representative Plaintiff Jennifer Duncan received medical attention for her exposure after being transported by bus to another emergency treatment area.

88. Representative Plaintiff Jennifer Duncan watched the suffering of her daughter and Clifton DeLoach as they struggled to breathe.

89. The Representative Plaintiffs assert that other members of the class were present in the Plume Area with persons closely related to them at the time of the exposure and witnessed their pain and suffering due to respiratory problems, skin exposure, and other effects of exposure to high concentrations of chlorine gas for an extended period of time. Plaintiffs are entitled to specific and separate damages for the negligent infliction of emotional distress upon them as a bystander to these events and suffering.

90. The Representative Plaintiffs claim actual damages, including separate awards for medical monitoring, punitive damages, attorney's fees, and litigation costs for the negligent infliction of emotional distress.

## FOR A SIXTH CAUSE OF ACTION
### (Medical Monitoring as to All Defendants)

91. The Representative Plaintiffs incorporate by reference the above allegations as if re-alleged herein.

92. The Representative Plaintiffs and other Class Members have, relative to the general population, been significantly exposed to a toxic substance, the release of which was caused by the tortious conduct of the Defendants.

93. Liquid chlorine, among other chemicals which were potentially released, is a proven hazardous substance.

94. As a proximate result of their exposure to the toxic liquid chlorine in the form of chlorine gas, Representative Plaintiffs and other Class Members have an increased risk of contracting serious latent diseases.

95. The increased risk of disease makes it reasonably necessary for the Representative Plaintiffs and other Class Members to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure.

96. Monitoring procedures exist that make the early detection of disease possible in the Representative Plaintiffs and other Class Members.

97. The Representative Plaintiffs, on behalf of the Class, seek a separate award to establish a fund to be provided by the Defendants to satisfy the medical monitoring costs of the Representative Plaintiffs and Class Members.

## DEMAND FOR A JURY TRIAL

98. The Representative Plaintiffs demand a trial by jury on behalf of themselves and the Class Members.

## PRAYER FOR RELIEF

WHEREFORE, the Representative Plaintiffs, on behalf of themselves and the Class Members ask this Court to inquire into these matters and to certify the class as defined in this complaint, issue judgment in favor of the Representative Plaintiffs and others similarly situated against the Defendants, jointly and severally, for actual damages, including separate awards for medical monitoring, punitive damages, reasonable attorney's fees, and litigation costs pursuant to one or more of the above causes of action, and for any other relief this Court deems just and equitable.

January 14, 2005

_____[signature: Paul Hulsey]_____

HULSEY LITIGATION GROUP, LLC
Paul H. Hulsey, D.S.C. No. 9325
William J. Cook, D.S.C. No. 7167
Charleston Harbor
2 Wharfside 3
Charleston, SC 29401
tel: (843) 723-5303
fax: (843) 723-5307

and

Martha M. Rivers, D.S.C. No. 7414
Attorney at Law
13326 Church Street
Williston, SC 29853
tel: (803) 266-2290
fax: (803) 266-2588

**ATTORNEYS FOR THE PLAINTIFFS**